Morning, Your Honors. My name is Maria Harrigan with the State Appellate Defender representing Ms. Matthews. Morning, Your Honors. Assistant State's Attorney Joan Fraser on behalf of the people. Morning, Counsel. In how much time? I expect to take about 20 minutes total with 15 in the opening and reserving 5 minutes for rebuttal. 15 minutes, Your Honor. Very well. Your Honors, this morning I would like to focus my argument on the first two issues raised in my brief, that the evidence that Sherry Dillon, one of the State's witnesses, was administered a polygraph examination and two of her prior consistent statements came in in Ms. Matthews' trial. We contend that both of these instances were improper. Turning to the polygraph evidence issue, polygraph evidence is generally precluded because it is inherently unreliable and yet quasi-scientific so as to possibly lead a jury to give it undue weight. There is a narrow circumstance where polygraph evidence is admissible and that is to rebut evidence that a witness' pretrial statement or a defendant's pretrial admission was coerced by the police. The reasoning is that the polygraph exam could provide an alternative explanation other than coercion for why a witness or the defendant changed his story. In this case, the exception does not apply. There was no evidence of coercion here regarding Sherry Dillon. Sherry Dillon got up and testified and she maintained throughout her testimony that she only implicated Matthews because Matthews made an admission to her. She denied that she was coerced by the police into making this admission. Two police officers testified in the state's case-in-chief that they did not threaten or promise her anything in exchange for implicating Matthews. Defense counsel simply wanted to impeach Ms. Dillon with the allegation that she, at some other point in time, three weeks after the polygraph exam was administered, that she may have made an inconsistent statement to my client's mother, who was Dillon's neighbor. She admitted running into Dillon's neighbor and having a conversation with her, but she denied that she made the statement. And the content of the impeaching statement was that she told my client's mother that she only implicated Matthews to avoid being charged with this murder herself. And she denied on the stand again that she ever said that to my client's mother. Defense counsel's routine impeachment about a prior inconsistent statement of a witness does not open the door to polygraph evidence. The state concedes that this situation doesn't completely fit into the exceptions that have been discussed in the cases that we've both cited, the Jefferson-Jackson and its progeny, but calls for an expansion of the exception to cases where defense counsel merely cross-examines a witness about whether she made an inconsistent statement at some other time to show that she possibly had lied at one point. In making this argument, the state points to the fact that defense counsel was allowed to perfect his impeachment by calling Rena Hull-Huley to the stand, who said, yes, three weeks after my daughter was arrested, Sherry Dillon told me that the only reason she implicated her was so she could avoid being charged. But the perfection of impeachment doesn't open the door to the polygraph evidence. The evidence is only allowed to provide, again, an alternative explanation for coercion. There was no allegation of coercion here, and the polygraph evidence was three weeks removed in time from this alleged prior inconsistent statement. But in fact, there is an allegation of coercion. It's just not coming from the witness, right? It's a ques- it's, it's, it's, the impeachment of Sherry Dillon was to show that she made an inconsistent statement, a statement inconsistent with her testimony at some other point in time. But it was predicated on coercion. But the substance of the statement was not evidence, not substantive evidence. It was just, it was, it was reduced for impeachment. And it had, and again, it had nothing to do with, often these cases are, a person was taken for a polygraph and then they change their story. This polygraph was given three weeks before this alleged inconsistent statement was given, and she was long away from the police station. It had nothing to do with explaining why she may have made this inconsistent statement. Again, the, the language in a case called People v. Roseman talks about how this is so prejudicial that a court has to actually narrowly construe and scrutinize if the polygraph evidence is relevant, if it would not cause undue prejudice, and if there was no other impeachment available to the state. In this case, again, three weeks after the polygraph, that's when the statement was made. The, the defense, so it provided no explanation. And the state had alternative means of impeaching the statement. They were allowed to call somebody who was present when the state's attorney interviewed Rena, Rena Hull, Hull-Huley, and that person said that during the interview she admitted that maybe Sherry Dillon told her that her daughter committed these crimes. So there was a way for the state to impeach, to rebut the impeachment in this case. Polygraph evidence was completely irrelevant and completely overly prejudicial in this case. Again, the, the state asserts that the exception to the ban should be expanded because the cases that have addressed the issue of the admission of polygraph evidence really goes to whether the jury was misled. Again, but they all have to do with the narrow interpretation of Jefferson and Jackson of the polygraphic evidence explaining why someone changed their story. That's simply not the case here. And cases have also held under Garden-Jackson that the improper admission of polygraph evidence is structural error. So we don't even have to do a harmless error analysis, even where the evidence is overwhelming or damning. In this case, the evidence was far from overwhelming in any, in any case. The state's case, aside from Dillon's testimony, was entirely circumstantial. There is an innocent explanation for the physical evidence tying my client to the apartment. She lived with the man. She had a sexual relationship with him. Her fingerprint was in the house. She was also a crack addict and gone much of the time. And she could have come back in the morning to take the TV because she needed money. There's an innocent explanation for all of this. Dillon is the only one that tied her to the actual, actual offense. If your honors have no further questions, no questions on the first issue, I would like to just briefly touch on the prior consistent statement issue. Well, isn't the rationale, though, advanced in Jefferson and Binion and that line of cases to address and rebut the allegation of coercion, police coercion, right? Rebut the allegation of police coercion, yes. And that's what we have here, an allegation of police coercion coming through a third party. But to provide, but it also has to be tied to explaining, giving an alternative explanation of police coercion. In this case, Dillon maintained that she was not coerced. She gave consistent statements while she was in police custody. She gave consistent statements to the grand jury. She denied making the statement to my client's mother that she had a different reason for implicating her. There's no evidence that substantive evidence that she was coerced. She denied it. Two police officers in the state's case in chief said that she was not coerced, she was not threatened, she was not promised anything. So it was consistent that there was no coercion here. And if you look at the cases that I've cited where polygraph evidence is allowed in, it is really to explain why somebody changed their story. Defendant testifies to one thing, but he made a confession. Oh, I was coerced. No, you took a polygraph. That and then you changed your story. I guess my point is conceptually it's consistent though. There's an allegation here that somebody changed their story. As opposed to the individual saying, I'm not changing my story or I never said that or they made me say that. Correct, but there still has to be evidence coercion. And again, the defense counsel's motive here in impeaching Sherry Dillon was to show the jury that at some other point in time she said something different. It was not to, she consistently, he tried to get her to say she was coerced. She didn't say that. I get it. So she was made no deal. And it's so far, again, it's so far away in time, it could not have explained why she made some statement three weeks later. In addition, the jury was allowed to hear that Dillon was consistent with her trial testimony, her grand jury testimony, and her written statement to the police. The state argues that these consistent statements should have come in to correct, rebut and incorrect inference raised by defense counsel. However, they concede that it doesn't come in to rebutteries and fabrication or a motive to lie. And this is contrary to longstanding principles, holding that when the credibility of a witness is questioned, a party cannot just use prior consistent statements to rehabilitate that person. That would completely swallow the rule against banning prior consistent statements. The introduction of these statements was not harmless. The evidence was far from overwhelming. Again, the state's case was circumstantial. Dillon was the only person that tied my client to the actual crime. There was an innocent explanation for all the circumstantial evidence. And so, therefore, the introduction of the prior consistent statements prejudiced my client. Defense counsel didn't preserve the issue, but he was ineffective for not objecting to this, because clearly it should not have come in. And, again, the evidence was far from overwhelming, so this prejudiced my client. Or, in the alternative, this issue should be considered as plain error for the same reasons, because the evidence was closely balanced under the second prong of Herring. If Your Honors have no further questions, for the reasons stated here in my brief, we request that Angela Matthews' conviction should be reversed and this cause remanded for a new trial. Thank you. Thank you, counsel. May it please the court, counsel. Again, my name is Joan Frazier, assistant state's attorney. In this case, it's clear that after defense counsel impeached Sherry Dillon on the basis that she was a drug user, he had little means of attacking her highly inculpatory testimony. So his strategy was to argue that she gave a statement to the police, and that's all. The implication being that if she gave a statement that was the product of coercion, it was not credible, and neither was the trial testimony. In order to present this defense, defense counsel introduced surprise testimony, not just in the middle of the trial, but in the middle of his cross-examination of Sherry Dillon, that she would testify she had a conversation that Rina Holt-Huey, the defendant's mother, would testify that Dillon told her the only reason she gave a statement was because the police told her she wouldn't be charged with first-degree murder otherwise, and because she was afraid of going to jail and the police said they would release her. The direct result of this tactic was the admission of polygraph evidence and the prior consistent statements. With regard to the prior consistent statements, the Supreme Court has affirmed that these statements can come in in circumstances other than the two usual exceptions. The court has said that the admission of the statements has to be looked at on a case-by-case basis. Again, defense counsel used the tactic of a surprise witness. He didn't disclose her in his answer to discovery, and he never disclosed the statement either. This was a total surprise to the state, and defense counsel told the court, I guess it just slipped my mind. That left the state in the position where in the middle of the trial, they had little opportunity to discuss the issue with Sherry Dillon other than a short break in the trial, and it was very late in the day for the state to consider their strategy in light of that. That makes it admissible? No, not that alone, Your Honor, but since defense counsel used improper tactics to cast doubt on the voluntariness of the statement, it left the state shorthanded, and the state was entitled to rehabilitate Dillon's testimony. In People v. Cathy, you have a circumstance where a witness testified on cross-examination, that she could not recall whether she told the police the defendant's name in an interview. The state was permitted to introduce testimony, her prior consistent statement, to show she did in fact name the defendant to police. The Illinois Supreme Court said it was proper to admit the prior consistent statement because the jury may have been left with the impression that she never named the defendant to police. So too in this case, the surprise insinuations of coercion may have left the jury with the impression that Dillon's statement was involuntary, and that by extension, her testimony was not credible. The state was entitled to correct this misimpression with Dillon's prior consistent statements, which by the way, defense counsel never objected to because it was part of his tactic to use those statements. How would it change if the defense counsel gave adequate notice of an attempt to call this witness? The fact of the matter is the trial court took a break, gave the state an opportunity to talk to Dillon mid-testimony, and also gave the state an opportunity to interview the defendant's mother. So how would that change? They were given all those opportunities that they would have otherwise given had adequate notice been given. Well, that's the whole point, Your Honor, that we don't know what the state would have done. This was in the middle of a trial. It was a very purposeful, even though defense counsel denied it, flagrant violation. And the state is in the middle of a three-day trial, there's no weekend in there, with a bevy of witnesses, and is forced to, with this highly important witness, testify her in the middle of defense counsel's cross-examination. That's not adequate. Well, what more could you have done, though? I mean, what more, if they had three weeks' notice or three months' notice, what more could they have done other than interview the mother and run this by their witness? What more could they have done? Again, that's the whole point, Your Honor. We don't know what we could have done. Well, but I'm asking you, assuming they did give 30 days' notice. Well, the state may have had a more thorough cross-examination of Rena Hull-Huey. The state may have been able to call witnesses to counter her testimony. That's the point. They did. Pardon me? They did. Well, they called a victim witness, but in the Logan case, the court said it's not very helpful to the state when it presents a self-serving testimony of a state's witness. And that's what we were forced to do. We had no opportunity to, this is probably the most, this is the most important witness in the case, other than the defendant. She couldn't be more critical. Defense counsel knew about her, Hull-Huey, and her statement. He admitted months. He had all the time in the world to prepare his defense in light of that, but the state didn't. And is there a possibility we might have examined Dillon differently, on direct? Certainly there is. Is there a possibility we may have called different witnesses? Certainly there is. So we asked for leave to present her testimony solely for the purpose of rehabilitating her testimony. It was just so that we could assert that her statement to police and her grand jury testimony was, in fact, voluntary. Counsel, just so that I'm clear, it's your proposal that we admit polygraph evidence if the state is surprised? That's how the rules should be written? No, Your Honor, this is reference only to the prior consistent statements. Polygraph testimony, may I get to that in 15 seconds? May I just finish this issue first? Thank you. Furthermore, and importantly with regard to the prior consistent statements, defense counsel acquiesced by eliciting substance from the statements himself. And the reason he did it, I'm sure defense counsel will say that was ineffective assistance, that was his strategy. That's all he could do with Dillon was to suggest that police coerce her to give her a statement. So he brought out some conflicts in her grand jury testimony and in her statement. Yes, and under Graham and Illinois Supreme Court opinion, a defendant who invites or acquiesces to admission of improper evidence cannot complain. If there was error with regard to this, it was harmless. Again, the claim was not properly preserved for review. The evidence, I'll talk about a little bit later, was not close. It has been repeatedly held that error in admitting prior consistent statements does not involve a substantial right. And courts have also said that prior consistent statements are not prejudicial when a witness is repeating her own statement, which is what occurred here. With regard to the polygraph. That's the whole point behind disallowing prior consistent statements, because it bolsters the testimony of the witness, right? Correct. But in that instance, the defendant is prejudiced. Well, courts have said in considering whether or not an error was harmless, it's less prejudicial when a witness is repeating her own statements, as opposed to when a third party repeats the witness's statements. The third party repeating the witness's statements gives more credible. That's what the courts have held, Your Honor. Counsel, in this situation, this circumstance where there is circumstantial evidence and the testimony of Ms. Dillon, which really is the State's case, doesn't the admission of these prior consistent statements factor heavily on a prior effect? I would assume so, Your Honor. But the point is that by defense tactics and limiting the State's case the way that counsel very blatantly did, the State was entitled to rehabilitate its witnesses. And that's all it was. It was rehabilitation. And the State never used her grand jury testimony or her statements as substantive evidence. It was her trial testimony. And her trial testimony was very thorough. It took the State's case from start to finish with what she knew about what the defendant did and what the defendant said. So the prior consistent statements affirmed that her grand jury statement and her statement to police were voluntary, but her testimony standing on its own was absolutely more than sufficient to convict this defendant. It's not a circumstance where her trial testimony was weak or strongly impeached. It was extremely thorough, and the only impeachment had to do with coercion. So under those circumstances, the trial is a search for the truth. The State had the right to rehabilitate this witness with surprise, improper, once the defendant presented improper and surprise testimony. So the only impeachment didn't deal with just coercion. It dealt with drug use and intoxication as well, right? That's correct, Your Honor. I assume that's why he assumed the tactic of bringing up her statement and bringing up allegations of coercion, because he had no other way to attack her testimony beyond she's a drug user, which, of course, the State had already brought out. With regard to the polygraph evidence, this was absolutely admissible evidence. In Binion, the court said that when a witness gives a statement and that witness took a polygraph test, under certain circumstances, evidence of coercion can come in. Now, in this case, as I said, there was a surprise testimony, and the State asked to present polygraph evidence of Dillon. The court said, no, it's not warranted yet, but you may renew your motion later. So later in the defense case, the defense counsel did, in fact, call Rena Hull-Huey, and she did testify as a matter of substance, what I said earlier, that Rena Hull-Huey would say Dillon said the police coerced her into giving a statement, and she was given immunity in exchange for giving her statement. A defendant has said that it was only impeachment. It was only tying up impeachment. It was not substantive, but, in fact, per defense counsel's request, it was substantive evidence, and the discussion of that begins at LL130 in the record. Defense counsel did want that to come in substantively, and so it did. In response, the detective testified in rebuttal simply that Dillon took a polygraph test. It was only introduced to show the chronology of events. He never said what the results of the test were. He never told the jurors why the polygraph test was given, and immediately after that, the court, using almost word-for-word the limiting instruction in People v. Binion, explained the purpose of the polygraph exam to the jurors. It was to explain chronology, that the jurors should not surmise what the results of the test were. Counsel, you refer to Binion, and Binion is an extension of Jefferson. Binion relates to a witness who alleges coercion and recants the prior statement, right? Correct. Do you have any law on point where it's a witness who does not ever allege coercion, but a third party who comes in and says the witness claimed it at a prior date? Your Honor, this would be an extension of Binion. It would. So you invite this court to broaden or widen the narrow exception advanced in Jefferson and Binion? Yes, Your Honor, and this case is a perfect example of why it should be done. The question shouldn't be which witness suggested coercion, but rather whether the defense case left the impression of coercion. There's no doubt here. It shouldn't matter whether the testimony came from a witness like Dillon or a witness like Rena Hull-Huey, who repeated what Dillon said. What's the difference? She repeated it, and it came as a matter of substance. You don't think there's a difference if a witness is on the stand, the only witness in the case who can say, the defendant told me she committed this murder. You don't think there's a difference between her saying, I never told police that, I'm saying this never happened, they coerced me into making that statement, and a third party come in and said, well, the witness at some point said that she just did it because the police coerced her, even though that witness maintains, I never said that and I was never coerced. You don't see a distinction? Well, Your Honor, the key concerns are, is the state using the polygraph evidence as a shield or as a sword? That's the metaphor that's used. Did we introduce the evidence anticipatorily? No, we didn't. It came in as a shield once the allegations were made. The key question is, was there evidence of coercion? Yes, there was evidence of coercion. So under those circumstances, the state should be entitled to. But under existing law, the key question is, who advances the allegation of coercion? That's the existing law. Well, Your Honor, I think that's one of the questions, but I think the other question is whether there's been evidence of coercion. It's not just who said it. In a case like Logan, the court pointed out to us. Why do we need to get into that if the witness denies coercion? Pardon me? The witness who took the polygraph test denies that she was coerced. Because in Logan, which involved a witness who claimed that he had been coerced, the court said the self-serving testimony from a state's witness to rebut would not have been as effective as polygraph evidence. So I think Logan, at least to some extent, supports the position that we're taking. Justice Sterba asks, what's your best authority for the position that you're advancing this morning? Binion and Logan. Okay. And neither involve third party. That's correct. Okay. That's correct, Your Honor. But nonetheless, the allegation was made. And as I said, there was no indication to the jurors what the result of the polygraph test was. It was only the chronology of events. And that's all it was, and that's the only way that the state argued it in closing. It was never argued substantively. If it was there, it should be considered harmless. Talking about the evidence very briefly, the circumstantial evidence, even apart from Dillon's testimony, was overwhelming. Such as? The victim, Mr. Brown, was last seen walking into his apartment on the night of his murder with the defendant. She had the keys to his home. She was able to unlock the multiple doors to get into the place, according to Dillon's testimony. The defendant failed to call the police when she found Brown's body. She was seen stealing Brown's television the next morning. She lied to Mrs. Paradise when Mrs. Paradise asked her a couple days later, where's Brown? She lied about it. Her DNA was found underneath the victim's fingernails. In addition, her credibility was severely damaged. She gave conflicting stories to the police in a number of respects. And they weren't small conflicts either. She claimed that she was not given her constitutional rights at the police station. The state showed a video where she was, and she said that she understood them. She lied about what time she was in Brown's apartment. She lied about how many times, or gave conflicting stories, how many times she was in and out of the apartment. So even without Dillon's testimony, the circumstantial evidence was extremely strong. And evidence that Dillon took a polygraph test before giving her statement should not be considered pivotal. The state was entitled to use it as a shield once the allegation of coercion came in. And we therefore ask that this court affirm the defendant's conviction. Thank you. Thank you, Ms. Gray. Just briefly, Your Honors, regarding the prior consistent statement argument, the state talks about how they were surprised with this witness. They were given the opportunity to interview her. They were allowed to rebut her impeachment by calling their own investigator, who said that she overheard Hull Hewley say that, yes, maybe Dillon did say that Matthews committed this murder. So they weren't really – the fact that this came in the middle of trial didn't really harm their case. There wouldn't have been anything else they could have done. There were no other people in the conversation with Hull Hewley and Dillon, so no other witnesses could be called to that conversation. There was really nothing else they could have done.  In addition, the cases they talk about, Caffey, that witness herself in that case said she didn't remember if she implicated the defendant. Sherry Dillon said, I told the police this, I'm telling you this, I've told the same thing throughout the entire – so Caffey is not an applicable case to this case at all. And again, the defense counsel wasn't affected for not objecting. He didn't acquiesce. He only started questioning Dillon about inconsistencies and things trying to impeach her grand jury testimony after the judge had let it in. He was doing what he could with the evidence that the judge said could come in. So the prior consistent statement came in. The grand jury testimony came in. He impeached her. He tried to impeach her after that. So that is not acquiescing. There was no strategy in not objecting to the admission of the prior consistent statements. They're extremely prejudicial. That's why they're barred. Moving on to the polygraph issue. It was not – Helen Healy's testimony was admitted to perfect her impeachment. It was not admitted as substantive evidence. This completely explodes the narrow exception for the admission of polygraph evidence that was outlined in Jefferson and Jackson by our Illinois Supreme Court. There is simply no case where a witness herself denied she was ever coerced and some impeached third party's testimony of a statement that she may have made three weeks after the polygraph exam was given. It completely explodes the exception that was followed. Counsel, the state relies on and leans heavily on Binion and Logan. Address Logan and why it's inopposite to the case at large. Again, in Logan, the witness said she was coerced. And the fact that she was given a polygraph exam would provide this alternative explanation to her allegation that she made these statements under duress. We don't have that situation here. We have a possible inconsistent statement made three weeks to Sherry Dillon's neighbor, who was my client's mother. She could have just been trying to appease the mother by saying, no, I didn't mean to implicate your daughter. They knew each other. That's an explanation for the statement as well. So Logan and Binion simply don't – they're not on point with this case. And they don't direct this court to expand the exception to this type of case where there's a third party. But the state would argue they're conceptually compatible to the incident case. But if you look to the language of the cases that discuss the admission of polygraph evidence, they consistently direct the trial courts to carefully look and narrow this exception. This is an extremely narrow exception because of the inherent unreliability of polygraph tests. So to do this would completely swallow the rule. So any time a defense attorney could try to impeach somebody with an inconsistent statement she may have made, and it happened to do with if the statement was voluntary, they could bring in polygraph evidence. That would completely explode the exception to the rule. If you have no questions for these reasons, we request that you rehearse. I would like you to address the issue of the closeness of the evidence. The evidence here, aside from Dylan's testimony, was circumstantial. It was undisputed that my client had been living with Mr. Brown. So the fact that her fingerprints and her DNA and she had a key, there was an explanation for that. That's not necessarily evidence of her guilt. She was also a crack addict. She didn't necessarily lie to the police. Who knows if she could remember what crack house she was in. She was out all night that night. She came and went from different people's apartments. She was telling the police what she did. Didn't she acknowledge that she lied a few times to the police? She acknowledged that she told the difference. She wasn't sure where she was. She was with Yolanda. She was at this crack house. She came back. I thought she characterized it as a lie. She may have, but she also, again, was out on this bender this night. And so that is, again, just circumstantial. She's coming back and getting the TV and not calling the police. She's a crack addict. She doesn't want to deal with the police. So that's also an explanation for why she didn't report the dead body, why she may have took the TV. She was after money. Not making her a stellar human being, but not necessarily indicative of her guilt. If Your Honors have no questions, thank you very much. Thank you. Thank you both. We'll take this matter under the advisory. Court is resolved.